**In re OPINION OF THE JUSTICES.**

Supreme Court of Delaware.

May 21, 1974.

To His Excellency Sherman W. Tribbitt
Governor of Delaware.

Reference is made to your letter, dated May 15, 1974, requesting the Opinions of the Justices, under 10 Del.C. § 141,[1] upon the following question:

"Where an office of a Constitutional Judge becomes vacant while the Senate is in session, by when must the Governor submit to the Senate a name for confirmation as an appointment to such vacancy to comply with Article 4, Section 3 of the Constitution of Delaware?"

The question relates to the vacancy on the Supreme Court created by the retirement of Associate Justice James B. Carey, effective May 15, 1974, on which date the Senate was in regular session.

As indicated in your letter, the question arises by reason of the provision of Article 4, Section 3 of the Delaware Constitution, Del.C.Ann., governing the timing of appointments to vacancies in constitutional judgeships occurring when the Senate is not in session.[2] The Constitution is silent as to any special time requirement when the vacancy occurs while the Senate is in session, as in the present situation.

In either event, the following provision of Article 4, Section 3 of the Constitution governs:

"* * * before sending the name of any person to the Senate for confirmation as the appointment of the Governor to a vacancy in any Judicial Office as aforesaid, the Governor shall, not less than ten (10) days before sending the name of such person to the Senate for confirmation, address a public letter to the President of the Senate informing him that he intends to submit to the Senate for confirmation as an appointment to such vacancy the name of the person he intends to appoint."

I.

■ Preliminarily, it will be noted that this response consists of the opinions of the two Justices of the Supreme Court remaining upon the retirement of Justice Carey. After careful consideration, we have concluded that a Governor's request for an advisory opinion under 10 Del.C. § 141 is addressed solely to members of the Supreme Court duly appointed and qualified as Justices thereof, and not to any other member of the Judiciary. The nature of this advisory function is non-judicial; it is not an adjudication. In re Opinions of the Justices, 8 Terry 117, 47 Del. 117, 88 A.2d 128 (1952). In the per-

---

1. 10 Del.C. § 141 provides in pertinent part:
"(a) The Justices of the Supreme Court, whenever the Governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touching the proper construction of any provision in the Constitution of this State, or of the United States, or the constitutionality of any law. enacted by the general assembly of this State * * *."

2. Del.Const., Art. 4, Sec. 3 provides in pertinent part:
"* * * If a vacancy shall occur, by expiration of term or otherwise, at a time when the Senate shall not be in session, the Governor shall within thirty (30) days after the happening of any such vacancy convene the Senate for the purpose of confirming his appointment to fill such vacancy and the transaction of such other executive business as may come before it. Such vacancy shall be filled as aforesaid for the full term."

formance of such non-judicial function, the Justices do not sit as a Court and the quorum requirement of a three member Supreme Court (Art. 4, Sec. 12) is inapplicable. Accordingly, no other member of the Judiciary has been designated to join us in the consideration of the question presented.

## II.

The 30 day requirement of Article 4, Section 3 is part of the Constitution as enacted in 1897. Its purpose appears in the Constitutional Debates (at pp. 941-2) in the words of Judge Spruance:

"* * * you will observe it is not contemplated that when a Judge dies or resigns there is going to be a vacancy, or somebody appointed until the next meeting of the Legislature, but there is a provision here that when a vacancy shall occur by expiration of term or otherwise at a time when the Senate shall not be in session, the Governor shall within thirty days after the happening of any such vacancy convene the Senate for the purpose of confirming his appointment to the said vacancy. That is not convening the whole Legislature, but convening the Senate, which would be done at a very small expense; and it is very desirable. That is a desirable provision because we do not want a man appointed with the uncertainty as to whether in his official duties, he is going to be confirmed by the Senate. Thirty days seemed to be as short a time as would be desired to make the necessary arrangements to call the Senate together, and then upon their confirmation for him to be appointed."

Delegate Woodburn Martin saw the purpose of the provision as follows: (Debates, pp. 944-5)

"* * * there is an idea which I suggested from the beginning, and that is that that concurrence was not to be deferred until the next regular session of the Senate when a man who was appointed could get eminent lawyers to prepare his opinions, when he could give entire satisfaction in the discharge of his duties as Judge, when he could build up a coterie of friends around him to pass upon his confirmation, but the Senate was to pass upon this appointment within thirty days after it was made, so that it would pass upon the man's personal worth and merit, and if he was a man who had made a sufficient reputation in the practice of his profession at the bar of this State, the Senate would confirm his appointment. If he was not a man of that character, if he was not a man of that ability, they would not concur in the appointment, but the Governor would be compelled to submit some one else to them for their concurrence."

█ It thus appears that the purpose of the 30 day requirement of Article 4, Section 3 was to bar long interim appointments [3] and, alternatively, to avoid the existence of a vacancy in a constitutional judgeship during a long interregnum, i. e., during a long period of time between the expiration of one term and the beginning of another. See Opinion of the Justices, Del., 189 A. 777 (1963).

Obviously, the framers conceived of no such long interregnum problems if the vacancy occurred while the Senate was in session. The precise reason for such distinction is not clear, but it is reasonable to assume that it was based upon the presumption that the Governor would act within a reasonable time [4] in the exercise of his appointive power.

---

3. The members of the Court have since advised that the Constitution does not permit interim appointments of constitutional judges and that constitutional judges do not hold over until their successors are appointed and qualified. See Opinion of the Justices, Del., 189 A.2d 777 (1963).

4. The letter of inquiry points out that in Opinion of the Justices, Del., 189 A.2d 777, 779, it is stated: "* * * if the Senate is in session, it is the Governor's duty to submit an appointment for confirmation." Necessarily implicit in that statement, we think, are the words "within a reasonable time".

Article 15, Section 5 of the Constitution provides that, generally, public officers hold over until their successors are duly qualified; and under Article 3, Section 9, generally, the Governor has the power to make recess appointments to fill vacancies in public office. Together, generally speaking, these two provisions assure continuity in the performance of the public business. But constitutional judgeships are exceptions to both of these provisions: constitutional judges do not hold over and the Governor may not make a recess appointment to a vacancy in a constitutional judgeship. See Opinion of the Justices, Del., 189 A.2d 777 (1963). Thus, the constitutional scheme permits a vacancy to exist in a constitutional judgeship. If the vacancy occurs when the Senate is not in session, it is clear, under Article 4, Section 3, that the Governor has a maximum of 30 days within which to submit his nomination to the Senate to fill the vacancy. If it occurs when the Senate is in session, it seems to follow, in the absence of any controlling constitutional limitation, that the Governor should act to fill the vacancy within a reasonable time so that the administration of justice may be continued with as little interruption as possible. This is particularly important in the case of a vacancy in the Supreme Court where three Justices are required for a quorum.

Accordingly, we submit the following opinion upon the question presented:

When a constitutional judgeship becomes vacant while the Senate is in session, the timing of the Governor's submission to the Senate of the name of his appointee-successor is unlimited by any express provision of the Constitution, except for the 10-day-public-notice-of-intent provision of Article 4, Section 3; but the spirit and intent of general provisions of the Constitution, relative to the continuity of public business in the event of vacancy in other public office, furnish a guideline for the exercise of the Governor's power of appointment of constitutional judges as

promptly as may be reasonable and practicable in fulfillment of the urgencies of the judicial system of the State.

Respectfully submitted,

D. L. HERRMAN,
Chief Justice.

WM. DUFFY,
Associate Justice.