### In re OPINION OF THE JUSTICES.

Supreme Court of Delaware.

July 31, 1974.

(§ 279 provides for appointment of trustees or receivers for dissolved corporations.)

To His Excellency Sherman W. Tribbitt
Governor of Delaware

Reference is made to your letter dated July 9, 1974, in which you request, under 10 Del.C. § 141,[1] the opinions of the Justices upon the following question:

"Is House Bill No. 692, which requires that editorials in newspapers published within the State of Delaware be signed by the writers thereof, unconstitutional as an infringement on the freedom of the press guaranteed by Article 1, Section 5 of the Delaware Constitution [Del.C.Ann.] and the First and Fourteenth Amendment to the Constitution of the United States?"

In considering the request, we have had the valuable assistance of A. Gary Wilson, Esquire, Deputy Attorney General, who at our request filed a brief and orally argued in support of the constitutionality of H.B. No. 692. We have also had the valuable assistance of Rodman Ward, Jr., Esquire, and Jan S. Black, Esquire, counsel for The News-Journal Company, who briefed and argued the proposition that the Bill violates the Federal and Delaware Constitutions.[2]

I.

It should be noted at the outset that this response consists of the opinions of the two Justices of the Supreme Court remaining upon the retirement of Justice Carey. As stated in our opinion to you dated May 21, 1974, the nature of our function under 10 Del.C. § 141 is advisory and non-judicial. Opinions of the Justices, Del.Supr., 320 A.2d 735 (1974). For the reasons stated therein, no other member of the Judiciary has been designated to join us in considering the question presented.

1. 10 Del.C. § 141 provides in part:
   "(a) The justices of the supreme court, whenever the governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State * * *."

2. At our direction, the Clerk of the Supreme Court notified each daily and weekly newspaper published in Delaware that, through counsel, it might brief and argue the question submitted to us. The News-Journal Company made the only appearance.

## II.

The question presented relates to the constitutionality of H.B. No. 692 under both the Federal and Delaware Constitutions. In view of our conclusion, we find it unnecessary to consider the question under the State Constitution independently. The guarantee of freedom of the press contained in the First Amendment to the Federal Constitution is binding upon the State through the Fourteenth Amendment. Schneider v. New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). In addition, it is probable that the free press provision of the Delaware Constitution, Art. 1, § 5, has the same scope as the First Amendment. Cf. Barbieri v. News-Journal Company, Del.Supr., 189 A.2d 773 (1963).

## III.

H.B. No. 692, enacted by the General Assembly and now before the Governor for approval, provides:

"§ 3902. *Newspaper Editorials*

"Each editorial in a newspaper published within the State of Delaware shall be signed by the person writing the editorial."

It contains the following synopsis:

"Because editorials are often written in an attempt to influence legislation or influence the outcome of an election, the public is entitled to know the identity of the person writing the editorial, so that people may better judge its merits."

The First Amendment provides that:

"Congress shall make no law * * * abridging the freedom * * * of the press * * *."

Over the years, the United States Supreme Court has made many ruling interpreting and applying this provision but, in our view, the test of the constitutionality of H.B. No. 692 is found in Talley v. California, 362 U.S. 60, 64 S.Ct. 536, 538, 4 L.Ed. 2d 559 (1960). The Supreme Court there considered the constitutionality of a Los Angeles ordinance which prohibited the printing and distribution of handbills unless they included the names and addresses of the persons who prepared, distributed or sponsored them. In holding the ordinance unconstitutional on its face, the Court stated:

"There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression. 'Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.' * * *.

"Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all. The obnoxious press licensing law of England, which was also enforced on the Colonies was due in part to the knowledge that exposure of the names of printers, writers and distributors would lessen the circulation of literature critical of the government. * * *."

The Attorney General points out that there was a strong dissent by three Justices in *Talley*, and so there was; but, given Federal supremacy in this First Amendment issue, we are obliged to follow the majority decision of the United States Supreme Court in *Talley*.

In our view, H.B. No. 692 presents a stronger case for protection than that presented in *Talley*. There the Court found that an anonymous handbill was entitled to First Amendment protection. Here, the publisher of the newspaper sought to be controlled is not anonymous.

Presumably, unless otherwise indicated, the fully identified publisher adopts the unsigned editorial as its own, regardless of the identity of the penman.

The Justices of the Supreme Judicial Court of Maine recently considered a question comparable to that presented here. Opinion of the Justices, 306 A.2d 18 (1973). Citing *Talley*, the Justices there concluded that a proposed Maine statute, requiring that newspaper editorials "shall indicate by a byline the person or persons who have written such editorials", was unconstitutional as an abridgment of freedom of the press (or freedom of speech) in violation of the First Amendment.

The most recent decision by the Supreme Court of the United States in a freedom-of-the-press case was Miami Herald Publishing Company v. Tornillo, —— U.S. ——, 94 S.Ct. 2831, 41 L.Ed.2d —— (1974). The direct holding, based on First Amendment requirements, was that a Florida "right of reply" statute [3] was unconstitutional. Unanimous in result and almost so in rationale, the Court stated:

> "The choice of material to go into a newspaper, and the decisions made as to limitations on the size of the paper, and content, and treatment of public issues and public officials—whether fair or unfair—constitutes the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time."

*Tornillo* clearly reflects the current view of the law applicable to a freedom of the press question such as is here presented. Any statute, present or proposed, must meet its standards. In our opinion, H.B. No. 692 fails so to do.

The synopsis accompanying the Bill states a purpose relating to the identity of persons writing editorials "in an attempt to influence legislation or influence the outcome of an election". While an election reform purpose has saved some statutes addressed to anonymity, cf. Canon v. The Justice Court for Lake Valley Judicial District, etc., 61 Cal.2d 446, 39 Cal.Rptr. 228, 393 P.2d 428 (1964), and United States v. Scott (D.N.D.) 195 F.Supp. 440 (1961), that result does not follow here. Both cited cases involved statutes addressed to anonymous distribution of election campaign materials; neither involved a statute addressed to newspapers. Indeed, we are unaware of any case upholding an anti-anonymity statute addressed to newspapers.

\*   \*   \*   \*   \*   \*

In view of the conclusion reached upon the First Amendment basis, it is unnecessary to consider the vulnerability of H.B. No. 692 under the Due Process and Equal Protection Clauses.

\*   \*   \*   \*   \*   \*

■  For the reasons stated, we are of the opinion that House Bill No. 692 is unconstitutional on its face as an abridgment of the freedom of the press guaranteed by the First Amendment to the Federal Constitution.

Accordingly, we answer the question presented in the affirmative.

Respectfully submitted,

DANIEL L. HERRMANN,
Chief Justice

WM. DUFFY,
Associate Justice.

---

3. Briefly, the Statute provided that if the personal character or official record of a candidate for state office was attacked by a newspaper, he had the right to demand that it print his reply, free of cost to him.