**OPINION OF THE JUSTICES of the Supreme Court in Response to a Question Propounded by the Governor of Delaware.**

Supreme Court of Delaware.

March 9, 1976.

To His Excellency Sherman W. Tribbitt Governor of Delaware:

Reference is made to your letter dated March 3, 1976 and received March 5 con-

taining the following request for the opinions of the Justices of the Supreme Court under 10 Del.C. § 141:[1]

"Article III, Section 1, of the Constitution of the State of Delaware, reads as follows:

'The supreme Executive powers of the State shall be vested in a Governor.'

Article III, Section 17, of the Constitution of the State of Delaware, reads as follows:

'He (Governor) shall take care that the laws be faithfully executed.' . . .

Title 29, Delaware Code, § 6103, reads as follows:

'All moneys which, under this chapter, are a part of the General Fund shall be deposited daily to the credit of the Secretary of Finance in the Farmers Bank and a report, signed by the responsible head of each agency, shall be submitted to the Secretary of Finance, with copy thereof to the Auditor of Accounts and Budget Director.'

Title 29, Delaware Code, § 2704, reads as follows:

'The State Treasurer shall have the custody of the money belonging to the State and to the School Fund and shall deposit the money in the Farmers Bank of this State. The money shall continue on deposit until drawn by checks given by him in direct payment of appropriations by law or in the transfer of money from 1 State Treasurer to his successor in office.

The State Treasurer may deposit and disburse in accordance with any appli-

cable federal law any funds received from the United States without further specific appropriation from the General Assembly.'

It has been brought to my attention that the State Treasurer believes that recently revealed changing and questionable economic conditions have become a concern to her office and she questions the statutory obligation of the Executive to continue to deposit new receipts in the Farmers Bank.

. . . ., I request your opinion as to my Executive power under the Constitution of the State of Delaware to continue to have funds deposited as required by the statute cited."

You did not state that the opinions are urgently needed but, since the request relates to the duty to make "daily" deposits under § 6103, we have undertaken to provide a prompt reply. For that reason, we state our opinions without the assistance of counsel and to the best of our abilities within the time available.

■ Before discussing your request, we must note that our statutory duty and power are limited to providing opinions to the Governor, only; and, of course, the constitutional inquiries as to which we may advise are only those specified in 10 Del.C. § 141 and no other. *In re Opinions of the Justices,* 18 Terry 117, 88 A.2d 128 (1952). We have no authority to advise as to the duties of the State Treasurer, none of which are constitutional.

In considering the Governor's constitutional powers, we have briefly reviewed the statutes defining the duties of the State

---

1. 10 Del.C. § 141 provides in part:
   "The justices of the supreme court, whenever the governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touching the proper construction of any provision in the Constitution of this State . . . . ."

Treasurer, on the one hand, and the Secretary of the Department of Finance, on the other. See, for example, 29 Del.C. § 8303 as to the Secretary and 29 Del.C. § 2714 as to the Treasurer. Facially, the statutes are not entirely clear in defining the separate responsibilities of the respective officers for the deposit of State moneys. For some purposes, any difference in responsibility may be significant in determining the extent of the Governor's power to direct that a specified act be done or that a particular policy be followed. But, for present purposes, a definitive study of each officer's responsibility for the deposit of State moneys is not necessary. We say this because we regard your request as relating to all moneys received on behalf of the State by persons or agencies within the Executive Branch, including the State Treasurer.

So viewed, it seems to us that your request is whether persons and agencies within the Executive Branch should "continue to deposit new receipts in the Farmers Bank" or whether the Governor, invoking Article III, Sections 1 and/or 17 of the Constitution, has the power to direct that such deposits not be made.

■ We turn now to the statute: Section 6103 is indisputably written in mandatory terms—it directs that "[a]ll [General Fund] moneys . . . shall be deposited daily . . . in the Farmers Bank . . . ." The statute is presumptively constitutional, cf. *Fraternal Order of Firemen of Wilmington v. Shaw*, 41 Del.Ch. 399, 196 A.2d 734 (1963), and the clear Legislative purpose is to bank all receipts in the Farmers Bank on a daily basis.

■ The constitutional duty of the Governor to take care that the laws be faithfully executed includes a duty to enforce § 6103 until the General Assembly determines otherwise by repealing or modifying it.

■ But § 6103 does not specify the kind of "deposit" to be made, nor is the term defined in the statute. In common usage, the word simply means to place money in a bank account "for safekeeping" under an arrangement which "creates the relationship of creditor and debtor . . . ." *Webster's Third International Dictionary*. The terms or conditions on which moneys are so placed or deposited vary widely. A "deposit" of moneys in a bank may refer, for example, to a "demand deposit," or to a "time deposit," or to a "certificate of deposit," among others. See the definitions of some of these as applied to State to State reserve requirements. 5 Del.C. § 907. Some of such deposits require a bank to pay interest thereon, others do not. Some of such deposits are "secured," others are not. Some of such deposits require notice to the bank before withdrawal, others do not. In sum, there are different bases on which moneys are commonly "deposited" in a bank and we are not aware of any statutes limiting the deposit of State moneys to a specific kind of arrangement.

This discussion demonstrates, we think, that the term "deposit" as used in § 6103 is ambiguous and requires construction. And such construction must be made in light of the pertinent facts and circumstances. Compare *E. I. duPont de Nemours & Co. v. Clark*, 32 Del.Ch. 527, 88 A.2d 436 (1952); *Hutton v. Phillips*, 6 Terry 156, 70 A.2d 15 (1949); *Finks v. Maine State Highway Commission*, Me.Supr.Jud.Ct., 328 A.2d 791 (1974).

Your letter refers to "recently revealed changing and questionable economic conditions," but that is too vague a description upon which to formulate an opinion. We assume that the reference is to recently published reports about the financial difficulties of the Farmers Bank but, even with that assumption, there is not a sufficient foundation on which to exactly measure the extent of the Governor's constitutional

powers[2] in the administration of § 6103. In brief, we cannot provide definitive opinions as to your constitutional Executive powers without a detailed statement of the pertinent facts.

■ But while we cannot provide an explicit response to your request, we can respond with certainty as to one aspect of the inquiry: We think it clear that the Governor is under no statutory duty "to continue to have funds deposited" on an *unsecured* basis in the Farmers Bank if to do so would, in the exercise of a prudent business judgment, place them in foreseeable danger of being lost. It has, indeed, been said that "[o]ne duty of a public officer entrusted with public moneys is to keep them safely, and this duty he performs at his peril." 63 *Am.Jur.2d* Public Officers and Employees § 328; that view has been applied when a loss has been occasioned by the failure of a public depositary, 67 *C.J.S.* Officers § 119b; 63 *Am.Jur.2d* supra § 330. Such rules must, of course, be considered in light of § 6103, but the point is that the statute does not require continuing deposits of funds under foreseeable risk of loss. A prudent person certainly would not do that and we find nothing in § 6103 requiring that unsecured deposits continue to be made even if a prudent business judgment suggests otherwise.[3]

■ The "supreme Executive powers" vested in the Governor by the Constitution, Art. III, § 1, have not been defined in our cases and, indeed, have only been referred to once or twice. See, for example, *State ex rel. James v. Schorr*, 6 Terry 18, 65 A.2d 810 (1948); and the *Constitutional Debates* provide little guidance. But, given the broad language, it is our view that the provision constitutionally vests in the Governor the power to take reasonable action to protect State property; and that includes the power to order that State moneys not be deposited under circumstances which would put them in foreseeable peril or risk of loss.

To sum up, in our opinions, subject to any contractual arrangement between the State and Farmers Bank, 29 Del.C. § 6103 establishes a duty to deposit on a daily basis in the Farmers Bank all General Funds received by the Executive Branch; that the kind of deposit to be made is not specified; that therefore the statute is ambiguous; that the duty to continue to deposit new receipts in the Farmers Bank depends upon the circumstances, including particularly the terms of the deposit; that there is no duty under § 6103 to continue to deposit new receipts on an unsecured basis regardless of consequences; that there is no duty to continue to make such deposits if to do so would place them in foreseeable jeopardy; and that the Governor's powers under Art. III, § 1 of the Constitution permit him to take such action as necessary to avoid the deposit of new receipts under circumstances that would place them in such jeopardy of not being returned or paid out on the State's order.

The foregoing is the opinion of both Justices who sign this letter. The Chief Justice has disqualified himself from rendering an opinion on the subject about which you inquire.

Respectfully submitted,

WILLIAM DUFFY

JOHN J. McNEILY
Justices.

---

2. Some of the facts pertinent to a complete response to your request are these: Is there a contract between the State and Farmers Bank covering moneys deposited? If so, what are its terms? In what amounts are daily deposits normally made? What balances are normally carried in the State accounts? Are the deposits secured? If so, what are the terms?

3. Delaware has by statute adopted the prudent person standard for fiduciaries managing property for the benefit of others. 12 Del. C. § 3302. See *Wilmington Trust Company v. Coulter*, Del.Supr., 41 Del.Ch. 548, 200 A.2d 441 (1964); II *Scott on Trusts* § 176.