## OPINION OF THE JUSTICES.

Supreme Court of Delaware.

March 15, 1978.

---

To His Excellency Pierre S. du Pont, IV
Governor of Delaware

Reference is made to your letter dated August 14, 1977 requesting the opinions of the Justices, under 10 *Del.C.* § 141,[1] upon the following questions:

"1. Is Section 95(c) of House Bill 300, as amended, unconstitutional in that it reposes in the hands of a minority of the members of the General Assembly the power to amend said Act other than by

Bill having the concurrence of a majority of both the House of Representatives and the Senate in contravention of Article VIII, Section 6, and Article II, Section 10, Delaware Constitution?

2. Does Section 95(c) of House Bill 300, as amended, improperly authorize the exercise of executive power by a legislative committee in violation of Article II, Section 1 and Article III, Section 1 of the Delaware Constitution?

3. Assuming *arguendo* that the General Assembly may delegate administrative functions to one of its committees, is Section 95(c) unconstitutional in that it fails to provide for sufficiently definite guidelines governing the exercise of the functions so granted?"

House Bill 300, as amended, is entitled: "AN ACT MAKING APPROPRIATIONS FOR THE EXPENSE OF THE STATE GOVERNMENT FOR THE FISCAL YEAR ENDING JUNE 30, 1978, AND TO AMEND CERTAIN PERTINENT STATUTORY PROVISIONS."

Section 95(c) of that Bill provides as follows:

"(c) The State agencies named in Section 1 of this Act must submit a reduction plan or program to carry out the intent of this Section on or before September 1, 1977, jointly to the Budget Director and the Controller General for their final approval. Upon failure by any State agency to comply with the intent of this Section, reductions in line item appropriations will be made by the Joint Finance Committee, or at its direction. The State agency will comply with the resulting revised budgetary appropriation amounts."[2]

---

1. 10 *Del.C.* § 141 states in part as follows:

"(a) The Justices of the Supreme Court, whenever the Governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touching the proper construction of any provision in the Constitution of this State, or

of the United States, or the constitutionality of any law enacted by the General Assembly of this State . . . .."

2. The "reduction plan or program" is a reference to § 95(b) which provides as follows:

"(b) The total amount appropriated, less the exclusions listed below, to each of the State agencies named in Section 1 of this Act

Following receipt of your letter, Richard P. Beck, Esquire, agreed to act as counsel in opposition to the Statute and, as usual, we requested the Attorney General to act as counsel in support of the Statute. Ms. Carolyn Berger, Assistant Attorney General, appeared in response to the request. Both of these attorneys have provided valuable assistance to the Justices in this matter.

Counsel agreed on a briefing schedule to be completed by December 6; by agreement the time was extended to December 9 and, again, to December 23. Oral argument was held on January 11, the next regular session of the Court.

During oral argument, the Justices made inquiry of counsel regarding the application of that part of § 141 which provides the basis for the present request, namely, that the Governor needs the opinions "to enable him to discharge the duties of his office with fidelity." In attempting to respond to such inquiry and to provide a basis for a response by the Justices under § 141, Mr. Beck advised that during a recess he had consulted with Ronald F. Mosher, the State Budget Director, and Mr. Beck informed us of certain information which Mr. Mosher had given him. Thereafter, on January 13, Mr. Beck filed an affidavit by Mr. Mosher and applied for further oral argument. That request was granted and additional argument was held on January 23. During

argument Ms. Berger handed to the Justices an opposing affidavit by Duane O. Olsen, the State Comptroller General.

The Justices have concluded that under present circumstances, we cannot provide opinions on the questions as presented. There are several reasons for this:

First, although the request for opinions was transmitted in August, by the time the issues were finally submitted by counsel on January 23, almost five months had passed and the fiscal year was more than half over. The Attorney General contends that, because of the lapse of time, the questions have become academic. It is quite clear from information furnished by counsel that the facts have changed substantially since the request was formulated. Indeed, much of the problem now seems to involve the fact of noncompliance with § 95(c) of the Bill providing for the submission of certain plans by September 1, and with § 95(d) providing that the Budget Director and the Comptroller General shall prepare an "official copy" of the Budget Appropriation Bill "on or before October 31, 1977." We also note that much of the present controversy now centers on the significance of § 83 of House Bill 300,[3] which is not referred to in the questions presented.

Second, opinions of the Justices given under 10 *Del.C.* § 141 are limited to questions of law only. We are unaware of any prece-

---

is hereby reduced by one percent (1%) for the fiscal year ending June 30, 1978. The following appropriations are excluded from the total amount appropriated for purposes of calculating the one percent (1%) reduction: Debt Service; reduction amount per Section 85 of this Act for savings under Centralized Purchasing; line item salary position such as Cabinet Secretary, Division Director, etc.; F.I.C.A.—Employer's Share; Pensions; Health Insurance; Revenue Refunds; Health and Welfare Grants; Jury Fees; and Central Data Processing Services. State agencies may include a reduction in applicable Other Employment Costs (F.I.C.A.—Employer's Share, Pensions and Health Insurance) as part of their total Agency reduction, if the primary reduction contemplated is in authorized positions and salaries and wages of employees."

3. Section 83 provides as follows:
"Section 83. The negative appropriation of $1,300,000 which reflects the estimated savings resulting from the centralization of the procurement function, is to be distributed as follows:
(i) The Director of the Budget and the Secretary of Administrative Services will jointly develop an allocation plan for this projected savings. This allocation plan will propose a projected savings for departments, divisions, agencies, boards and commissions, higher education and public education, including local school districts, and including the legislative and judicial branches. A copy of the completed allocation plan will be provided to the Controller General for his concurrence.
(ii) The negative appropriation will be transferred in accordance with the plan as a reduction of the appropriate budget lines."

dent which would permit the introduction of evidence in connection with an advisory opinion and, certainly, there is no basis for fact-finding by the Justices when there is factual dispute as is indicated by the affidavits filed. Accordingly, we may not consider the contents of the affidavits in this proceeding.

Third, under a settled construction of 10 *Del.C.* § 141, any question propounded by the Governor "should have a bearing upon a present constitutional duty awaiting performance by the Executive." *In re Opinions of the Justices*, 88 A.2d 128, 130 (1952). See also *Opinions of the Justices*, 358 A.2d 705, 707 (1976). In view of the apparent change of facts and circumstances since the presentation and acceptance of your questions, we are unable to say that the request is now within that established interpretation of § 141. We are also aware that § 141 provides that our opinions may be given when the Governor requires them for "public information," but, in our view, the request does not fall into that category.

Fourth, it has been the

"general policy of the Justices over the years to decline to furnish advisory opinions when the question propounded does not fall within the statutory limitations. *Opinions of the Justices*, Del.Supr., 88 A.2d 128 (1952); *Opinion of the Justices*, Del.Supr., 200 A.2d 570 (1964); *Opinion of the Justices*, Del.Supr., 305 A.2d 608 (1973). The policy is based upon the premise that, since the requirement imposed by the Statute upon the members of this Court to give advisory opinions is the placing upon them of a non-judicial duty, it should not be expanded beyond the precise terms of the Statute, for constitutional as well as other reasons. See especially *Opinions of the Justices*, Del.Supr., 88 A.2d 128 (1952) for a discussion of the constitutional problems involved in any such expansion."

*Opinion of the Justices of Supreme Court,* Del.Supr., 314 A.2d 419, 420 (1973).

Based upon our present understanding of the situation, it now appears that there are controverted issues of fact relevant to the merits and the conformity of the request to the provisions of § 141. Therefore, in accordance with the well established policy in such matters, we must respectfully decline to provide our opinions in response to your letter of August 14.

Respectfully,

(s) Daniel L. Herrmann
Chief Justice

(s) William Duffy
Justice

(s) John J. McNeilly
Justice