### OPINION OF THE JUSTICES.

Supreme Court of Delaware.

April 14, 1980.

To His Excellency Pierre S. du Pont Governor of Delaware.

Reference is made to your letter dated June 13, 1979 requesting the opinions of the Justices of the Supreme Court, pursuant to 10 *Del.C.* § 141,[1] upon the following question:

1. 10 *Del.C.* § 141 provides in part that:

"[t]he Justices of the Supreme Court, whenever the Governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touch-

"Is Senate Concurrent Resolution # 47 as amended, of the 126th General Assembly constitutional?"

The letter included background information on the question, as follows:

"The question raised concerns the validity of Delaware's ratification, by Senate Concurrent Resolution # 47 as amended, of the proposed 'Equal Rights Amendment' to the United States Constitution. As you are undoubtedly aware, during this session of the 130th General Assembly the Senate has had under consideration a Resolution (SCR # 8), which would rescind Senate Concurrent Resolution # 47 of the 126th General Assembly by which Delaware ratified the proposed Amendment. The Senate Judiciary Committee has had this matter under study and the Honorable Anthony J. Cicione, Chairman of the Judiciary Committee, has raised the question of whether Senate Concurrent Resolution # 47 as amended, is a valid ratification. I attach a copy of a letter from Senator Cicione to my Counsel, David S. Swayze, which details the Senator's concern with Senate Concurrent Resolution # 47.

Basically, it is alleged that at the hour Senate Concurrent Resolution # 47 was originally considered by the Senate of the 126th General Assembly, the United States Senate had not yet voted on the federal Resolution proposing the 'Equal Rights Amendment' to the Constitution. Thus, the question arises whether, under these circumstances, Senate Concurrent Resolution # 47 was properly before the Delaware Senate on March 22, 1972 and the House of Representatives on March 23, 1972 and whether if consideration by the Senate was premature, the constitutionality of Senate Concurrent Resolution # 47 as amended is affected."

Following receipt of your request, attorneys were appointed to aid us in examining the legal issues presented. Roderick R. McKelvie, Esquire, and James McC. Geddes, Esquire, agreed to act as counsel in support of the proposition that the Justices should not respond to the request and, alternatively, that Senate Concurrent Resolution # 47, as amended, is unconstitutional. John A. Parkins, Jr., Esquire, a Deputy Attorney General, accepted responsibility for presenting the contrary views, that is, the Justices should provide their opinions and the Resolution is constitutional. A brief for the Women's Rights Committee of the Delaware State Bar Association was submitted by Marsha Kramarck and Susan C. Del Pesco; and John Biggs, III, Esquire, filed a brief on behalf of the United Automobile, Aerospace and Agricultural Implement Workers of America. Counsel orally argued the issues on February 14, 1980.

The members of the Court express our thanks to all of those attorneys who provided valuable assistance in researching, briefing and arguing the applicable law.

Our inquiry must begin with the Statute under which the members of the Supreme Court deliver opinions to the Governor. Over the years, a number of opinions construing § 141 have been given by the Justices and those provide guidance for our present response. The Justices have clearly emphasized that advisory opinions are outside the mainstream of our responsibilities as judicial officers and, for that reason, the Statute has traditionally been given a very narrow construction.

In *Opinion of the Justices*, Del.Supr., 88 A.2d 128 (1952), the members of this Court examined the nature of a § 141 advisory opinion and said this:

"Since the giving of the opinion fixes no legal rights and entails no legal consequences, it involves no exertion of power over any person; it is merely the performance of an advisory function."

ing the proper construction of any provision in the Constitution of this State, or of the United States, or the constitutionality of any law enacted by the General Assembly of this State or the constitutionality of any proposed constitutional amendment which shall have been first agreed to by two thirds of all members elected to each house."

88 *A.2d* at 136. Indeed, the Justices referred to the advice given to the Governor as the performance of an "administrative duty." 88 *A.2d* at 136.

██ In other words, advisory opinions do not decide a case, do not adjudicate a dispute and are not judicial rulings in any sense. *In re Opinion of the Justices*, Del. Supr., 320 A.2d 735, 736 (1974). For those reasons, they are not binding on any court and do not carry precedential effect.

██ The character of advisory opinions given under the Statute differs significantly from our adjudicative responsibilities under the Delaware Constitution. Our duty as judges is to decide cases, that is, to adjudicate disputes or settle the rights of litigants in the State Court System. Opinions of the Justices given under § 141 are not in any way a part of that duty.

██ The contrast between the two functions is thus apparent and significant. As Judges, we exercise juridical powers that are complete and final within our jurisdiction. But, as advisors to the Governor, we offer opinions that are personal and binding on no one.

██ Because the functions differ in essence, § 141 has been given the limited application to which we have referred. In the 1952 *Opinions*, for example, the Justices explicitly stated in a letter to Governor Carvel that the "subjects upon which advisory opinions may be required are those specified in the statute and none other." 88 *A.2d* at 130. And, for the same reason, it has been the "general policy of the Justices over the years to decline to furnish advisory opinions when the question propounded does not fall within the statutory limitations." *Opinion of the Justices*, Del.Supr., 382 A.2d 1364, 1367 (1978); *Opinion of the Justices*, Del.Supr., 358 A.2d 701 (1976); *Opinion of the Justices*, Del.Supr., 314 A.2d 419, 420 (1973); *Opinion of the Justices*, Del.Supr., 305 A.2d 608 (1973); *Opinion of the Justices*, 200 A.2d 570 (1964).

██ We have emphasized that opinions given by the Justices "administratively" under the Statute are non-adjudicative expressions of personal points of view, but this is not to say that such opinions are the same as those given to the Governor by other lawyers. They are not. Such opinions are different and useful, and, properly understood, they are authoritative for one reason: the persons giving them are the members of the highest Court of this State and, in effect, are what one would expect the Justices to say if the issue had been presented to them in litigation. In the 1952 *Opinions*, the Justices stated that point this way:

> "As has been said, an advisory opinion of the kind required by our statute is not a judicial act, and such persuasiveness as it has rests solely in any weight that may attach to it as emanating from the individuals constituting the State's highest judicial officers."

88 *A.2d* at 136. In short, that is the reason why opinions given under § 141 are commonly regarded as authoritative, and that is why they are relied upon by the Governor and the public.

██ Therefore, the essential element is any request made by the Governor under the Statute is that it involve a subject matter which is within the jurisdiction of the Delaware Courts and as to which, in the normal course of events, the Supreme Court of this State can speak authoritatively. That is the *sine qua non* without which the opinions of the Justices are not purposeful, and no more useful, than those given by other lawyers.

We have endeavored to define the nature of a § 141 request made to the Justices and the limitations of a response thereto because those criteria are most important in our consideration of Your Excellency's inquiry concerning the Equal Rights Amendment, on which we now focus.

The question submitted, in the context of the relevant circumstances, amounts to this: Did the General Assembly's ratification in March 1972 of the Equal Rights Amendment conform to the requirements of the Fifth Amendment of the United States Constitution, and, if not, does such non-con-

formance invalidate the General Assembly's action?

Clearly, there is a public interest, nationally and locally, in the proposed ERA Amendment, and we recognize that it may well be desirable for public information purposes that any uncertainty as to where Delaware stands be settled. But the question concerns the procedure by which the *Federal* Constitution is amended. Article V of that Constitution establishes the procedure for amending it, thus:

"The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate."

The action which was involved, that is, passage of the Concurrent Resolution, occurred in the Delaware General Assembly, but the question concerns the legal effect or consequence of that action under Article V. In short, was the Assembly's action valid and effective under the Federal Constitution?

The Supreme Court of the United States has considered Article V in several cases, including *Hawke v. Smith*, 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871 (1920), in which the Court made the following comment about the amending process:

"This article makes provision for the proposal of amendments either by two-thirds of both houses of Congress, or on application of the Legislatures of two-

thirds of the states; thus securing deliberation and consideration before any change can be proposed. The proposed change can only become effective by the ratification of the Legislatures of three-fourths of the states, or by conventions in a like number of states. The method of ratification is left to the choice of Congress. Both methods of ratification, by Legislatures or conventions, call for action by deliberative assemblages representative of the people, which it was assumed would voice the will of the people.

The fifth article is a grant of authority by the people to Congress."

40 *S.Ct.* at 497.

And the Court observed that "ratification by a state of a constitutional amendment is not an act of legislation within the proper sense of the word. It is but the expression of the assent of the state to a proposed amendment." 40 *S.Ct.* at 498.

Two years later, in *Leser v. Garnett*, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922), Justice Brandeis, speaking for the Court on a challenge to the Nineteenth Amendment (which prohibits a denial of suffrage on the basis of sex), said that

"the function of a state Legislature in ratifying a proposed amendment to the federal Constitution, like the function of Congress in proposing the amendment, is a federal function derived from the federal Constitution."

42 *S.Ct.* at 217–218. See also 16 *Am.Jur.2d* Constitutional Law § 23.

These rulings, which emphasize the Federal character of the amending process under Article V, were followed in the next decade by an opinion which we regard as particularly significant on the question submitted to us. In *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), the Court had before it a case involving a proposed Child Labor Amendment to the United States Constitution. In 1925, the Legislature of Kansas had rejected the proposed Amendment but, in 1937, another attempt was made to ratify it. A controversy arose as to whether the Legislative vote of ratification was valid and resulted in litiga-

tion in the Supreme Court of Kansas. That Court accepted jurisdiction and determined that ratification of the Amendment was final and complete. The Supreme Court issued *certiorari* and, when the ruling was announced, Chief Justice Hughes wrote as follows:

> "Had the questions been solely state questions, the matter would have ended there [i. e., in the Kansas Supreme Court]. But the questions raised in the instant case arose under the Federal Constitution and these questions were entertained and decided by the state court. They arose under Article V of the Constitution, U.S.C.A., which alone conferred the power to amend and determined the manner in which that power could be exercised. *Hawke v. Smith* (No. 1), 253 U.S. 221, 227, 40 S.Ct. 495, 497, 64 L.Ed. 871, 10 A.L.R. 1504; *Leser v. Garnett*, 258 U.S. 130, 137, 42 S.Ct. 217, 66 L.Ed. 505. Whether any or all of the questions thus raised and decided are deemed to be justiciable or political, they are exclusively federal questions and not state questions. [Emphasis supplied.]"

59 *S.Ct.* at 975.

The underscored language, briefly, plainly and consistent with the prior decisions in *Hawke* and *Leser*, emphasizes that questions arising under Article V are "exclusively Federal questions and not state questions." And that ruling is directly relevant to the question proposed by Your Excellency: whether Senate Concurrent Resolution # 47, as amended, is valid, is exclusively a Federal and not a Delaware question.

Chief Justice Hughes also observed that it makes no difference whether Article V questions are considered to be "justiciable or political." If the former, they are determined by the Federal Court, if the latter, by Congress. But in either or both events the questions are exclusively Federal. In *Coleman*, the Court commented on an earlier controversy involving ratification of the

Fourteenth Amendment and noted that the *political* departments of the Government had dealt with the effect of prior rejections and attempted withdrawals of ratifications (under Article V) and that the

> "decision by the political departments of the Government as to the validity of the adoption of the Fourteenth Amendment has been accepted.

We think that in accordance with this historic precedent the question of the efficacy of ratifications by state legislatures, in the light of previous rejection or attempted withdrawal, should be regarded as a political question pertaining to the political departments, with the ultimate authority in the Congress in the exercise of its control over the promulgation of the adoption of the amendment."

59 *S.Ct.* at 980.

■ In our opinion, it makes no difference whether an issue of Delaware ratification of the ERA Amendment be regarded as justiciable or political, the result is the same: the issue is exclusively Federal.

We recognize that under some circumstances a state court may render an advisory opinion on a Federal constitutional question, *Doremus v. Board of Education*,[2] 342 U.S. 429, 72 S.Ct. 394, 397, 96 L.Ed. 475 (1952), but this is not the occasion for such an opinion. We say this for several reasons:

First, as the cited opinions of the United States Supreme Court consistently state, an Article V amendment issue is exclusively a Federal question and, therefore, a state court cannot have the last authoritative say about it.

Second, under *Coleman*, that issue is to be settled by Congress as part of its political responsibility, not by the courts.

Third, the question is presented to us in a non-judicial (administrative-advisory) context in which opinions by the Justices would not be subject to review by the United

---

2. The Supreme Court of the United States made this observation in an appeal involving a New Jersey statute which required daily readings from the Old Testament in public schools.

The Court dismissed the appeal because it did not present a "case or controversy" which is essential to jurisdiction.

States Supreme Court. The non-final and non-binding nature of the opinions would merely cloud an already controversial problem of national significance without adding to the process by which an authoritative answer might be given.

For the reasons stated herein, we respectfully decline to furnish our opinions about the Senate Concurrent Resolution # 47, as amended. Compare *Opinion of the Justices*, Del.Supr., 382 A.2d 1364 (1978); *Opinion of the Justices*, Del.Supr., 314 A.2d 419 (1973); *Opinion of the Justices*, 305 A.2d 608 (1973).

Respectfully,
DANIEL L. HERRMANN
Chief Justice
WILLIAM DUFFY
Justice
JOHN J. McNEILLY
Justice
WILLIAM T. QUILLEN
Justice
HENRY R. HORSEY
Justice.