284 A.2d 64.

BURTON S. RAYMOND, JR. *et al. vs.* ROBERT W. RAYMOND.

NOVEMBER 29, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  This is an appeal from a judgment entered in the Superior Court affirming a decree of the North Kingstown Probate Court which directed the appellants to file a final account.

The appellants are brother and sister. They are the executors of their father's estate. The appellee is the appellants' brother. The litigants have been before us previ-

ously when we sustained the Superior Court's denial of a motion made by the executors wherein they asked the court to order their brother to submit to a physical and mental examination. *See Robert W. Raymond* v. *Burton S. Raymond,* 105 R. I. 380, 252 A.2d 345 (1969).[1]

The record shows that letters testamentary were issued to Burton and Beverly in October 1962. Approximately four years later, during the month of October 1966, they filed a document entitled "Final Account." Schedule A of the account shows receipts amounting to $233,809.10. Schedule B lists total charges or expenditures of $167,732.44.

---

[1] At this point, we will attempt to clarify the record. The executors' first appearance before us in 1968 involved Robert's appeal from the denial by the Probate Court of a petition dated January 31, 1968 wherein he sought a revocation of the November 14, 1966 decree which purported to allow the executors' "final account." Although there is no transcript of the Probate Court's proceeding, the denial of Robert's petition apparently was based on the judge's ruling that no effective decree had ever been entered in his court. Robert's appeal was docketed in the Washington County Superior Court as Civil Action 68-4. While Robert's appeal was pending in the Superior Court, the executors began their effort to have his mental competence medically evaluated. The denial of the executors' motion led to the appeal to us which is referred to elsewhere in this opinion. After we remanded the record in 68-4 to the Superior Court, a judgment was entered in that court denying and dismissing both the executors' appeal and Robert's appeal. The denial of Robert's appeal had become academic because of the April 8, 1968 grant of his petition to compel an accounting. The executors' appeal from this action was docketed in the Washington County Superior Court as 68-7. This is the case that is the subject of this opinion. We have gone to some length in an effort to clear the record because the litigants are immersed in a number of probate appeals pending in the Superior Court that relate to their father's estate, their mother's estate and the executors' attempt to have a guardian appointed for Robert. A pre-trial order was entered in the Superior Court on December 17, 1968, consolidating 68-4 and 68-7. The records in each action have been certified to us. There was no necessity of furnishing us with the file in 68-4 as our consideration here is limited to the appeal in 68-7. The confused state of the record here is understandable but we urge counsel and court attachés to expend every effort to insure that only the record pertinent to an appeal is certified to this court. Their help will aid us as we seek to follow the travel of an appeal from the trial court to our court.

Schedule C carries a balance of $66,076.66. The account is set out on a printed form which was supplied to all the Probate Courts in this state by the Director of Administration pursuant to G. L. 1956, §33-22-16.[2] A hearing was conducted on this account by the Probate Court on November 14, 1966. On the decree portion of the account there appears the printed notation, "Account Allowed," together with the following signature: "James L. Taft, Jr. (L. H.) Probate Judge."

The executors had also filed an "Affidavit of Completed Administration." It, too, is set out on a printed form furnished by the state and contains a section entitled "Decree." Beneath this heading is found the printed statement "Affidavit accepted." The signature on this form is in the same style and form as the signature appearing on the decree embodied in the executors' account. Each decree is dated November 14, 1966.

On February 15, 1968, Robert filed a petition in the Probate Court asking that the executors file a first and final account. His petition was granted on April 8, 1968, and this grant is the subject of the instant appeal.

There were but two witnesses at the Superior Court jury-waived trial: the probate judge and the probate clerk. It is undisputed that the signatures appearing on the decrees were not those of the judge. The clerk had signed the decrees using the judge's name and then added her initials, "L.H." The judge testified that he did not and would not allow the executors' account because of their inability to supply him with vouchers and receipts which would verify the charges and expenditures listed on Schedule B. He insisted that, at a pre-hearing conference, he had notified counsel for the executors that, while he would

---

[2]In 1970, this statute was amended so as to make the Court Administrator responsible for the preparation and distribution of the various forms used in the Probate Courts.

not allow the account, it could be filed and its presence in the court record could be considered as "evidence" of the receipts, expenditures and the balance in the hands of the executors. This official declared that he had intended to "accept" the executors' affidavit but neglected to sign the decree section of that document.

The clerk admitted that she was not authorized to sign decrees but when pressed as to why she had signed the documents in issue, replied, "I thought he [the judge] had forgotten to sign them and I signed his name to them." She also expressed the thought that, by doing what she did, she was doing the judge a "favor."

The executors contend that, since the November 14, 1966 decrees have remained unappealed for a period in excess of one year, the Probate Court had no jurisdiction to direct any further accounting. They point to the fact that no claim of appeal to the Superior Court was filed within the 40-day appeal period provided by §33-23-1, and they further emphasize that at no time within the one-year period described in §9-21-6 did their brother ever petition this court for permission to prosecute an appeal from the November 14, 1966 decrees. They also refer us to several statutes relating to the practice in our Probate Courts which, they argue, are designed to afford finality to probate decrees and protection to an administrator or executor whose account has been approved by the Probate Court. None of the statutes alluded to by the executors are of any help to them in this appeal because the General Assembly, in speaking about probate decrees, assumed that any such decree would be signed by the judge and not by the clerk.

In considering the action taken by the probate clerk, we are guided by the rule which holds that although a clerk of court may, with respect to judicial proceedings, perform acts of ministerial and nondiscretionary character,

he has no judicial powers in the absence of some specific statutory and constitutional authority, and in those instances where judicial power is expressly given to the clerk, his power is to be strictly construed within the language of the provisions authorizing its exercise. *State v. Superior Court,* 236 Ind. 135, 138 N.E.2d 900 (1956); *Pacific Nat. Fire Ins. Co.* v. *Irmiger,* 254 Wis. 207, 36 N.W.2d 89 (1949). Section 33-22-19 provides that all decrees and orders of the Probate Court are to be in writing and *are to be recorded by the clerk* in a book kept for that purpose. This statute marks the extent of the clerk's authority as it relates to decrees presented to his court. He cannot sign them. All he can do is record them.[3]

A decree is a judicial fiat or pronouncement that determines a matter in controversy. A decree is rendered when the judge affixes his signature thereto. *Cates* v. *Wunderlich,* 210 Ark. 724, 197 S.W.2d 482 (1946). While legal preciseness requires that the word, "judgment," be applied

---

[3]Section 8-9-6 requires a city or town clerk, unless there is special legislation to the contrary, to serve as clerk of the Probate Court. The clerk of the North Kingstown Probate Court is the town clerk. The Legislature has passed numerous acts which permit the town clerk to sit as a probate judge in certain circumstances. *See* P. L. 1961, ch. 180 (Town of Narragansett); P. L. 1959, ch. 96 (Town of Johnston). In 1965, the General Assembly passed a special act permitting the North Kingstown Town Council to elect a probate judge. P. L. 1965, ch. 74. Previous to this time the town council had acted as the Probate Court. This legislation specifically provides that, in case of a vacancy or the absence of the judge or his inability to perform his duties, the judicial duties will be performed by the town solicitor.

to a decision made by a court of law and the word "decree"[4] be referred to as a decision made in our equity courts, probate courts or other tribunals that follow the course of equity, the term "judgment," when used in its broad sense, includes a decree and a judgment. A rendition of judgment is a judicial act which settles the respective rights and claims of the litigants. While the term "entry of judgment" has sometimes been used to include the "rendition of judgment," strictly speaking, these two terms are not synonymous. The rendition of a judgment, whether it be in the form of a decree or of a judgment, is a judicial act. Its subsequent entry, however, is a ministerial act. *In re Young's Estate,* 414 Ill. 525, 112 N.E.2d 113 (1953).

Although in *Burns* v. *Burns,* 92 R. I. 278, 168 A.2d 141 (1961), we said that a decree derives its efficacy from its entry, this statement presupposes the existence of a decree signed by the judge. In *Malinou* v. *McElroy,* 99 R. I. 277, 207 A.2d 44 (1965), we emphasized the ministerial functions of a probate clerk by pointing out that it was his duty, in absence of an order from the court, to accept for filing any paper presented to him without his passing upon the sufficiency or propriety of the proffered papers. We also observed that, since the statutory probate appeal period commences to run from the entry of a decree, the General Assembly had intended that sometime prior to entry, there would be a judicial determination made by the judge.

----

[4]An example of this type of exactitude can be seen in *Scolardi* v. *Scolardi,* 42 R. I. 456, 108 A. 651 (1920). There this court was presented with a petition to vacate a final decree entered in a divorce case. One of the petitioner's grounds for relief was a statute that today is cited as §9-21-4 (1969 Reenactment). This statute allows us, upon a proper showing, to grant relief to certain parties or garnishees against whom a "judgment has been rendered." It was decided that the petitioner could not rely on the statute as it did not apply to divorce proceedings because a decision in a divorce case finds expression in a decree and not in a judgment.

A decree does not become effective until it has been signed by a judge and entered by the clerk. *Sellman* v. *Sellman,* 238 Md. 615, 209 A.2d 61 (1965); *Bernard* v. *Walker,* 186 Tenn. 617, 212 S.W.2d 600 (1948). *See also, In re Young's Estate, supra.*[5] Accordingly, the November 14, 1966 "decrees" signed by the clerk of the North Kingstown Probate Court are nullities because they constitute an usurpation by a ministerial officer of what is a judicial function. *Midwestern Developments, Inc.* v. *City of Tulsa, Oklahoma,* 319 F.2d 53 (10th Cir. 1963).

Two final observations are in order. First, the executors have constantly referred to their October 1966 account as their final account. They are in error. A final account closes out an estate and acts to discharge the fiduciary and his surety from any further liability. Schedule A shows receipts. Schedule B discloses what has been paid out. Included therein are such items as payments and distributions made during the course of the administration of the estate. Schedule C contains the balance in the fiduciary's hands. A true final account should show no balance in Schedule C. The testator's will establishes a trust of his residuary estate and yet nowhere in Schedule B of their "Final Account" do the executors show a distribution of the residuary estate to the trustees.

Secondly, we would repeat what we said in *Smith* v. *Estate of Catterall,* 107 R. I. 729, 271 A.2d 300 (1970). There is *no* statutory basis for the use by an executor or an administrator of an affidavit of completed administration. Rhode

---

[5]This rule implements the oft-quoted principle that equity speaks by decree and an appeal in equity is taken from the decree not the decision. *Rounds* v. *Tefft,* 96 R. I. 274, 190 A.2d 727 (1963); *Tabor* v. *Tabor,* 73 R. I. 491, 57 A.2d 735 (1948). It should be remembered that since the effectuation of the Superior Court's Rules of Civil Procedure in January 1966, there has been a procedural merger between law and equity. Rules 58 and 77(f) list specific instances where a judgment or an order can be entered without the necessity of the judge signing the document.

Island probate law calls for a periodic and detailed accounting[6] of an estate's transactions. The affidavit does *not* comply with this requirement.

The executors' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Robert C. Hogan,* for appellants.

*Justin P. McCarthy, Leonard A. Kamaras,* for appellee.

---

[6]Section 33-14-1 requires an executor or administrator to render an account to the Probate Court within two years of his appointment and once a year thereafter. According to §33-14-2, the account must show the amount of inventory or the balance of the previous account and all subsequent increments thereto together with a schedule listing all charges, losses and payments made during the period covered by the account.