ZONING COMMISSION OF THE TOWN OF
BROOKFIELD *v.* FAIRFIELD RESOURCES
MANAGEMENT, INC., ET AL.
(13471)

Spear, Hennessy and Healey, Js.

Argued September 25, 1995—officially released March 14, 1996*

*Nancy Burton,* for the appellants (Laurel Hill Association et al.).

*Leonard A. Fasano,* with whom, on the brief, was *Edward N. Lerner,* for the appellees (defendants).

*Richard Blumenthal,* attorney general, and *Krista E. Trousdale* and *Joseph Rubin,* assistant attorneys general, filed a brief for the commissioner of environmental protection as amicus curiae.

HEALEY, J. This appeal[1] arises from an enforcement action brought by the zoning commission of the town of Brookfield (zoning commission) in the Danbury Superior Court against the owners and operators of a

---

* March 14, 1996, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] This appeal was consolidated with and argued at the same time as appeal 13735, *Keeney* v. *Fairfield Resources, Inc.,* 41 Conn. App. 120, 674 A.2d 1349 (1996) (DEP case).

sand, rock and gravel quarry[2] in Brookfield. The action was commenced by verified complaint pursuant to General Statutes § 8-12[3] and § 242-701 of the Brookfield zoning regulations (regulations).

The verified complaint alleges, inter alia, that the defendants operate a gravel excavation and removal

[2] The quarry occupies a 108 acre site, claimed as a nonconforming use, in a developed residential neighborhood bounded on the east by Laurel Hill Road.

[3] General Statutes § 8-12 provides: "Procedure when regulations are violated. If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter or, when the violation involves grading of land, the removal of earth or soil erosion and sediment control, to issue, in writing, a cease and desist order to be effective immediately. The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists, or the lessee or tenant of an entire building or entire premises where such violation has been committed or exists, or the owner, agent, lessee or tenant of any part of the building or premises in which such violation has been committed or exists, or the agent, architect, builder, contractor or any other person who commits, takes part or assists in any such violation or who maintains any building or premises in which any such violation exists, shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars nor more than two hundred and fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues or both; and the superior court shall have jurisdiction of all such offenses, subject to appeal as in other cases. Any person who, having been served with an order to discontinue any such violation, fails to comply with such order within ten days after such service, or having been served with a cease and desist order with respect to a

business at 98 Laurel Hill Road in Brookfield and that they have continued for some time to engage in the process of excavation and removal of natural resources on that property. The complaint further alleges that, in conjunction with the natural resources excavation and removal, the defendants have conducted and continue to conduct excavation, filling and grading work on the property, including digging, moving and removing soil and earth materials. Alleging that the town zoning regulations require a permit from the zoning commission, the complaint asserts that on January 20, 1989, permits issued to a prior operator of a gravel excavation business on the property were revoked for failure to comply with the conditions of those permits. It also alleges that the activity conducted by the defendants on the premises is a regulated activity pursuant to General Statutes §§ 22a-36 through 22a-45,[4] and that they have failed to file an application with the inland wetlands agency as required by General Statutes §§ 8-3 and 8-3c.

The complaint further alleges that on October 17, 1995, the zoning commission, through its zoning

violation involving grading of land, removal of earth or soil erosion and sediment control, fails to comply with such order immediately, or continues to violate any provision of the regulations made under authority of the provisions of this chapter specified in such order shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. In any criminal prosecution under this section, the defendant may plead in abatement that such criminal prosecution is based on a zoning ordinance or regulation which is the subject of a civil action wherein one of the issues is the interpretation of such ordinance or regulations, and that the issues in the civil action are such that the prosecution would fail if the civil action results in an interpretation different from that claimed by the state in the criminal prosecution. If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. The court before which such prosecution is pending may order such prosecution abated if it finds that the allegations of the plea are true."

[4] General Statutes §§ 22a-36 through 22a-45 are known as the inland wetlands and watercourses act.

enforcement officer, issued cease and desist orders to the defendants for violation of § 242-302 of the regulations, that there was no appeal of those orders to the Brookfield zoning board of appeals (zoning board of appeals), that the defendants have neither applied for nor obtained a natural resources removal permit as required by § 242-302 of the regulations, that they have not ceased the excavation and gravel removal, that the violation of the regulations has continued and will continue, and that the zoning commission "has suffered and will suffer irreparable harm in that the zoning regulations have been and will continue to be violated and [that] the [zoning commission] has no adequate remedy at law." The complaint further alleges that the zoning commission brings the action pursuant to § 242-701 et seq. of its regulations and General Statutes § 8-12 to stop the violation or to prevent and restrain any further violation of the regulations. The verified complaint asks for temporary and permanent injunctive relief enjoining the defendants from further violation of § 242-302 of the regulations and ordering them to cease all excavation and removal of earth materials until they obtain a permit pursuant to § 242-302 of the regulations. The complaint also seeks civil penalties, reasonable attorney's fees and costs.

On January 18, 1994, the court, *Stodolink, J.*, entered an order of temporary injunction against the defendants.[5]

[5] The temporary injunction of January 18, 1994, against the defendants stated the following:

"The Plaintiff's Application for Temporary Injunction and Order to Show Cause dated December 21, 1993 having been heard by the Court, it is hereby ORDERED:

"That a temporary injunction shall enter enjoining Fairfield Resources Management, Inc.

"That at 12:01 a.m. on January 20, 1994, Fairfield Resources Management, Inc. shall cease and desist from any operation in the way of extracting sand or gravel, rock crushing, blasting or pumping water from premises into Limekiln reservoir until further order of the Court.

One of the appellants in this appeal is the Laurel Hill Association (association), which is comprised of 120 persons whose families own property in the Laurel Hill neighborhood. The association had not attempted to intervene in this action as of January 18, 1994, although it did so later. On January 24, 1994, the court approved a stipulation modifying the temporary injunction of January 18, 1994, which modification had been agreed to by the parties to this litigation in the trial court. This stipulation vacated "that portion of the order entered on January 18, 1994, which prohibits the pumping of water from the premises into Limekiln Brook."[6]

Upon learning of this modification of the injunction, which the association maintained permitted the resumption of unlicensed water diversion and stone and rock processing in the absence of a zoning permit, Richard Gereg, who was president and spokesman of the association, filed a notice of intervention[7] on Janu-

"That a temporary injunction shall enter enjoining Rock Acquisition Limited Partnership from allowing Fairfield Resources Management, Inc. or any other entity from continuing any operation on the premises after 12:01 a.m. on January 20, 1994.

"That a penalty in the amount of $1,000.00 shall enter for each day of operation after January 20, 1994.

"That the matter is continued to January 31, 1994 at 12:00 p.m. for the defense to have a hearing de novo and for any evidence offered on that date.

"That the witnesses will be available for the hearing to be held on January 31, 1994.

"That if the presence of Mr. Edward Huse is necessary for the hearing on January 31, 1994, the matter will be continued to February 1, 1994 at 9:00 a.m."

[6] The modification of the temporary injunction approved on January 24, 1994, stated the following:

"The parties having appeared before the Court on the Defendant's oral motion to modify the temporary injunction, it is hereby ORDERED:

"That by agreement of the parties, the Court vacates that portion of the order entered on January 18, 1994 which prohibits the pumping of water from the premises into Limekiln Brook."

[7] The notice of intervention filed by Gereg stated the following:

"The undersigned, Richard Gereg, hereby intervenes in the above-captioned proceedings in accordance with the provisions of Connecticut General Statutes § 22a-19 (a).

ary 28, 1994, pursuant to General Statutes § 22a-19 (a).[8] Gereg then filed a motion to reinstate injunction[9] on January 31, 1994, by which Gereg sought to reinstate the original terms of the injunction. At a hearing on March 15, 1994, the defendants' counsel maintained that

"In support thereof, Richard Gereg represents as follows:

"1. I am over the age of eighteen (18) years and I believe in the obligation of an oath.

"2. I am personally familiar with the verified complaint in this proceeding and the factual circumstances under which it arose.

"3. Such circumstances include the operation of a quarry located on Laurel Hill Road in the Town of Brookfield and operations in and affecting inland wetlands and watercourses.

"4. The instant proceedings involve conduct which has or which is reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"5. A feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare exists in the activities carried out and proposed to be carried out by the Defendants named herein.

"6. Such alternative is to cease the said quarry operations and to cease the said operations in and affecting inland wetlands and watercourses."

[8] On March 15, 1994, the association, Gereg, Lloyd Willcox, Allen Blackman and Edward C. Huse had filed a motion to intervene in this case in the Superior Court "in accordance with Connecticut General Statutes §§ 52-102 and 52-107." The record before us does not show that this motion was ever acted on in the Superior Court. In any event, the only claim of intervention before us is under General Statutes § 22a-19 (a) and not under any other statute or on any common law basis.

[9] Gereg's motion to reinstate injunction stated the following:

"The Intervenor, Richard Gereg, moves that the Court reinstate in its entirety the temporary injunction which it ordered in this case on January 18, 1994.

"More particularly, the Intervenor moves that the Court reinstate its order that the Defendants cease and desist from pumping water from the site into Limekiln Brook.

"In support of this motion, the Intervenor represents as follows:

"1. On January 18, 1994, the Court (*Stodolink, J.*) entered an order of temporary injunction in these proceedings upon the application of the Plaintiff and over the objection of the Defendant.

"2. A copy of such order is annexed hereto.

"3. Such order by its terms prohibits 'pumping water from the premises into Limekiln [Brook] until further order of the Court.'

"4. On or about January 24, 1994, prior to Gereg's intervention, the Plaintiff and Defendants presented a stipulation to the Court whereby they requested that the Court vacate its order enjoining pumping of water as above stated.

his clients were before the court because of their failure to obtain a zoning permit and that the action was a "zoning enforcement action." This enforcement action, he suggested, involved a legal issue, with respect to which intervention under § 22a-19 (a) was inappropriate. He stated: "[T]hey can assert their intervenor's rights in the environmental case pending in Hartford . . . they have their forum in Hartford and they have their forum in the town of Brookfield."[10] Gereg coun-

"5. Thereupon, the Court issued a further order dated January 24, 1994, whereby it vacated that portion of the January 24, 1994 order which prohibits the pumping of water from the premises into Limekiln Brook.

"6. On January 29, 1994 Gereg intervened in these proceedings in accordance with the provisions of Connecticut General Statutes § 22a-19 (a) by filing a Notice of Intervention alleging in part that the above-captioned proceedings involve operations in and affecting inland wetlands and watercourses.

"7. Such operations constitute a regulated activity for which a permit is required pursuant to Connecticut General Statutes § 22a-42a (c) and § 220-7 of the Code of the Town of Brookfield, yet, such operations are being conducted without the requisite permit.

"8. Such operations also constitute a diversion of waters of the State of Connecticut for which a permit is required pursuant to Connecticut General Statutes § 22a-368 (b), yet, such operations are being conducted without the requisite permit.

"9. The January 18, 1994 Court order as above-referenced correctly enjoined the pumping of water from the site into Limekiln Brook because such activity was being conducted illegally without requisite permits as required by [General Statutes] § 22a-368 (b), § 22a-42a (c) and § 220-7 of the Code of the Town of Brookfield.

"10. The pumping of water from the site into Limekiln Brook will continue to be illegal unless and until proper permits are issued by the appropriate agencies, including the State of Connecticut Department of Environmental Protection and the Town of Brookfield Inland Wetlands Commission.

"11. The said Department of Environmental Protection instituted an action seeking injunctive relief and fines against the Defendants on or about November 22, 1993, for the Defendants' failure to obtain proper permits to divert water and conduct regulated activities as is alleged herein, in addition to other claims. Such action is pending in the Superior Court for the Judicial District of Hartford. A copy of the complaint in such action is annexed hereto.

"12. Wherefore, the Intervenor requests that the Court reinstate its order dated January 18, 1994."

[10] The other case heard with this appeal, the DEP case, had been brought on November 22, 1993, prior to the Brookfield zoning commission case and

tered the defendants' claim by arguing that water diversion, water table lowering and destruction of wetlands were inseparable from the natural resources removal, and attempted to support that argument by offering the testimony of a department of environmental protection (DEP) senior analyst who had been subpoenaed as a witness on Gereg's reinstatement motion. At the conclusion of that hearing, the court denied them standing under § 22a-19 (a) and denied Gereg's offer of evidence as to the issue of water diversion as well as "any opportunity to be heard in this case at this time."[11]

On March 15, 1994, additional motions to intervene pursuant to § 22a-19 (a) filed by the association and Lloyd Willcox were heard by the court. At the hearing, the defendants and the zoning commission opposed the motions for intervention. It is apparent from the transcript of that hearing that the parties urged upon the trial court their respective claims of § 22a-19 (a) under *Polymer Resources, Ltd.* v. *Keeney*, 32 Conn. App. 340, 629 A.2d 447 (1993), and that that decision was important in the trial court's reasoning in denying the intervention motions. Gereg,[12] Willcox and the asso-

had been returned to the Superior Court in Hartford. This is the case that the defendants' counsel referred to as "the environmental case pending in Hartford."

[11] The court's order of February 14, 1994, as set out in the record, was the following:

"The parties having appeared before the Court for the scheduled continuance for the Plaintiff's Application for Temporary Injunction, it is hereby ORDERED:

"That the Court will not entertain evidence as to the issue of nonconforming use.

"That the Court denies the Intervenor's offer of evidence as to the issue of water diversion.

"That the Court denies the Intervenor any opportunity to be heard in this case at this time.

"That the Court orders a reasonable amount of monitoring of the premises during business hours, limited to the Zoning Enforcement Officer and the Zoning Commission Chairman."

[12] Gereg had earlier filed his notice of reservation of appeal from the decisions of the trial court rendered as to him on February 14, 1994.

ciation have appealed to this court from the denial of their motions to intervene under § 22a-19 (a). We conclude that intervention status should have been granted to each of the intervenors. Accordingly, we reverse the judgment.

In this appeal, the intervenors claim that they possess § 22a-19 (a)[13] standing to participate as parties in this action. In doing so, they claim that they properly pleaded § 22a-19 (a) intervention, that they properly intervened into a proceeding for judicial review and that they are proper parties by virtue of the clear language of § 22a-19 (a).[14] The trial court, in announcing its conclusion, noted that "the issue is whether the intervenors have standing under § 22a-19 (a)" and "the question is whether this is an administrative licensing or other proceeding or a judicial review thereof made available by law, and the court is of the opinion that it is not." The intervenors claimed that even if this was not "administrative or licensing, and it's not licensing, it is a proceeding and therefore, it would qualify as some other proceeding by statute . . . ." At the same time, the intervenors also claimed that the matter "in some sense . . . is a judicial review of proceedings which

[13] General Statutes § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

[14] The intervenors also claim that the trial court improperly denied intervenor Gereg the opportunity to present evidence on the issue of water diversion and that the trial court improperly denied Gereg's motion to reinstate the terms of the initial injunction. Our disposition of the first issue is such that, in view of our disposition and remand, we need not reach the second and third issues.

were carried out by the zoning commission because this court is being asked to review whether, in fact, there was proper licensing." The amicus[15] claims that this matter in the Superior Court was encompassed by the "other proceeding" language of § 22a-19 (a). In any event, the trial court decided that the matter before it did not come within § 22a-19 (a).

At this juncture, we address a question presented not only in this appeal, but also in *Keeney* v. *Fairfield Resources, Inc.*, 41 Conn. App. 120, 674 A.2d 1349 (1996) (DEP case), argued before us at the same time as the present appeal. The question is what was the legal viability of the Appellate Court's decision in *Polymer* in light of *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 630 A.2d 1304 (1993). In examining the claims made by the parties as to the *Polymer* cases, we have also examined the transcript of the March 15, 1994 hearing in the Danbury Superior Court in which the trial court denied the plaintiffs' motions to intervene. The defendants argued, inter alia, that the matter before the court was a civil action as opposed to an administrative action, that under the language of § 22a-19 (a) as well as the Appellate Court's decision in *Polymer*, which was binding, intervention was not appropriate in a zoning enforcement action brought under § 8-12, as they argued this matter was. Those seeking to intervene argued, inter alia, that, even assuming that the matter was not administrative or licensing, it would qualify as some other proceeding under the statute as well as

---

[15] The commissioner of environmental protection (commissioner) instituted the enforcement action in the DEP case. The attorney general, representing the commissioner in that matter, filed his brief as plaintiff-appellee in that appeal, and moved to file a brief as an amicus in the present appeal in support of the appellant intervenors. This court granted the motion to file the amicus brief, but ordered the attorney general to file a single consolidated brief in the two actions. In oral argument before this court, the attorney general not only argued his position in the DEP case, but also argued in support of the intervenors in the present appeal.

being a review of proceedings carried out by the zoning commission. They also urged the reasoning of the dissent in the Appellate Court's decision in *Polymer* concerning which the zoning commission, in opposing intervention, directed the court's attention to footnote 9.[16] Although no one during that hearing alerted the trial court to any claimed effect of the Supreme Court's decision in *Polymer* on the Appellate Court's decision, that claim has been briefed and argued before us and must be decided.

In the underlying trial court case in *Polymer*, the trial court denied the motion of the commissioner of environmental protection (commissioner) to dismiss the application for injunctive relief for failure to exhaust its administrative remedies, and denied a motion to intervene filed by the Farmington Residents for a Clean Environment (FRCE). The trial court decision led to two separate appeals. In the Supreme Court case, the commissioner appealed from the trial court's denial of his motion to dismiss for failure to exhaust its administrative remedies. In the Appellate Court case, the FRCE appealed from the denial of its motion to intervene. On July 29, 1993, the Supreme Court ruled that because the plaintiff had failed to exhaust its administrative remedies, the court lacked subject matter jurisdiction. It therefore reversed the trial court's judgment and remanded with direction to dismiss the complaint. On August 3, 1993, five days later, the Appellate Court upheld the trial court's denial of intervention to FRCE.

---

[16] Footnote 9 of the Appellate Court's decision in *Polymer* provides: "We note that the general language 'other proceeding' follows the specific terms 'administrative' and 'licensing' proceedings in the statute. 'The general terms will be construed to embrace things of the same general kind or character as those specifically enumerated.' *State* v. *Russell*, 218 Conn. 273, 278, 588 A.2d 1376 (1991); *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 104 n.31, 612 A.2d 1130 (1992). This rule of construction is frequently referred to as ejusdem generis. *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, [104 n.31]." *Polymer Resources, Ltd.* v. *Keeney*, supra, 32 Conn. App. 347 n.9.

It is the claim of the intervenors and the amicus in this case that, in view of the Supreme Court's decision in *Polymer*, the Appellate Court's decision in *Polymer* was not at the time of trial in this case, and is not now, anything more than an advisory opinion. They further suggest that the Supreme Court decision rendered the Appellate Court's decision in *Polymer* moot. Therefore, they claim that the trial court in this case should not have followed the Appellate Court's decision in *Polymer*. On the other hand, the defendants claim that the Appellate Court's decision in *Polymer* was not an advisory opinion and that its reasoning should be followed.[17]

These defendants also argue that "[t]here is no way the judges at the time the [Appellate Court's] opinion was finalized were aware of the [Supreme Court's] opinion in *Polymer*" and that "the records of the Connecticut Law Journal note that the opinion has not been withdrawn and that replacement pages have not been issued for said decision. At the time the [Appellate Court] opinion was finalized, an actual controversy existed. Therefore, the [Appellate Court's] *Polymer* case should be given precedential authority." They state that "[e]ven if not given precedential authority it would be the highest form of persuasive authority, since it was decided by the same court on the same subject matter 'but for fate.' " We do not find any of these claims of the defendants to be persuasive.

"A rendition of a judgment is a judicial act which settles the respective rights and claims of the litigants." *Raymond* v. *Raymond*, 109 R.I. 265, 271, 284 A.2d 64 (1971). "It may be expressed orally, or in writing, or in both of these ways, in accordance with the custom and usages of the court in which the judgment is rendered."

---

[17] At oral argument on these two appeals, counsel for the defendants stated that the brief in the DEP case also applies to the present appeal. We find no brief from the defendants filed in the present appeal.

*Goldreyer* v. *Cronan,* 76 Conn. 113, 117, 55 A. 594 (1903). "A judgment is in fact rendered in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him. . . . The judgment of a court is not rendered when the judge arrives at his decision in the privacy of his chambers, nor is the date placed on a paper by the judge determinative of the date when the paper is handed to the clerk." (Citations omitted.) *Bogaert* v. *Zoning Board of Appeals,* 162 Conn. 532, 535–36, 294 A.2d 573 (1972); *Hubbard* v. *Planning Commission,* 151 Conn. 269, 272, 196 A.2d 760 (1963); *Brown* v. *New Haven Taxicab Co.,* 93 Conn. 251, 258, 105 A. 706 (1919).

Under the rules of appellate procedure applicable to the Supreme Court and the Appellate Court, "[u]nless the court otherwise directs, its judgments and orders shall be deemed to have been rendered or made on the date they appear in the Connecticut Law Journal, and the judgments or orders shall be entered as of that date." Practice Book § 4117.[18] With reference to opinions of both the Supreme Court and Appellate Court, General Statutes § 51-213 provides in part: "Unless otherwise ordered by the court, official notification to counsel of record shall be by publication of the opinion in the Connecticut Law Journal." General Statutes § 51-215a (b) provides: "The clerk of the appellate court shall file with the reporter of judicial decisions copies of memoranda of decisions in appellate court cases. The reporter shall prepare all of the decisions for publication and index them in substantial conformity with the

---

[18] Practice Book § 4117 entitled "Judgment Files" provides: "Judgments of the court may be embodied in judgment files, to be drawn upon request and signed by the appellate clerk. Unless the court otherwise directs, its judgments and orders shall be deemed to have been rendered or made on the date they appear in the Connecticut Law Journal, and the judgments or orders shall be entered as of that date."

manner in which decisions of the supreme court are prepared and indexed. . . ."

The synthesis of these principles demonstrates that the judgment or decision of our Supreme Court in *Polymer* was rendered on July 29, 1993, the date that decision was released as indicated in volume 227, page 545 of the Connecticut Reports, and that the judgment or decision of the Appellate Court in *Polymer* was rendered on August 3, 1993, the date that decision was released as indicated in volume 32, page 340 of the Connecticut Appellate Reports.

Next, we examine the legal consequences of the Supreme Court judgment of July 29, 1993, on the later Appellate Court judgment of August 3, 1993. In its decision, the Supreme Court held: "We conclude that Polymer failed to exhaust its administrative remedies and that its failure to do so was not excused by any exception to the exhaustion rule. The trial court, therefore, lacked subject matter jurisdiction to entertain Polymer's application for injunctive relief. The judgment is reversed and the case is remanded to the trial court with direction to render judgment dismissing the complaint." *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 565. The complaint underlying both appeals is the same. " 'Subject matter jurisdiction involves the authority of a court to adjudicate the types of controversy presented by the action before it.' *Craig* v. *Bronson*, 202 Conn. 93, 101, 520 A.2d 155 (1987)." *Maresca* v. *Ridgefield*, 35 Conn. App. 769, 774, 647 A.2d 751 (1994).

The Supreme Court in *Polymer* held that "[b]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiffs' claim. . . . [W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings. . . . *Concerned Citizens of*

*Sterling* v. *Sterling*, 204 Conn. 551, 556–57, 529 A.2d 666 (1987)." (Internal quotation marks omitted.) *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 557. "A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. Such jurisdiction relates to the court's competency to exercise power, and not to the regularity of the court's exercise of that power." *Castro* v. *Viera*, 207 Conn. 420, 427, 541 A.2d 1216 (1988), quoting *State* v. *Malkowski*, 189 Conn. 101, 105–106, 454 A.2d 275 (1983).

The legal effect of the Supreme Court's decision in *Polymer*, remanding the case to the trial court "with direction to render judgment dismissing the complaint" was to order the final disposition of the case without a trial on the merits. See 24 Am. Jur. 2d, Dismissal § 1 (1983); 27 C.J.S., Dismissal and Nonsuit § 7 (1959); Black's Law Dictionary (6th Ed. 1990). In other words, Polymer brought this case in the first instance with want of authority to do so, because it had failed to exhaust available administrative remedy. Further, a decision of our Supreme Court is a controlling precedent until overruled or qualified. *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 61–62, 111 A.2d 4 (1955).

"It is well settled that the existence of an actual controversy is an essential element requisite to appellate jurisdiction" and that "[a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." *Sobocinski* v. *Freedom of Information Commission*, 213 Conn. 126, 134–35, 566 A.2d 703 (1989). Therefore, when the Appellate Court's decision in *Polymer* was "rendered" on August 3, 1993, it was "rendered" in a case that was legally nonexistent as determined by the Supreme Court on July 29, 1993. There was no actual controversy decided in its "decision" of August 3, 1993. Accordingly, this court's "decision" of August 3, 1993, could not render any actual or practical relief. Therefore, after

the Supreme Court released its opinion on July 29, 1993, the Appellate decision was not legally viable. It was, accordingly, not legally viable when the trial court acted in this case in 1994.

In *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 246, 558 A.2d 986 (1989), our Supreme Court stated: "Once it becomes clear that the trial court lacked subject matter jurisdiction to hear the plaintiffs' complaint, any further discussion of the merits is pure dicta. Lacking jurisdiction, neither the trial court nor this court should deliver an advisory opinion on matters entirely beyond our power to adjudicate." (Internal quotation marks omitted.) That court has also indicated that it has no jurisdiction to give advisory opinions. See *Moshier* v. *Goodnow*, 217 Conn. 303, 306, 586 A.2d 557 (1991), and cases cited therein. Our Supreme Court has also stated: "It is not our function to render opinions which are simply advisory. *Reply of the Judges*, 33 Conn. 586 (1867)." *Pellegrino* v. *O'Neill*, 193 Conn. 670, 683, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984).[19] Such an opinion is one of advice and not of judgment as there are no parties whose rights are adjudicated, and it is not binding on anyone. The nature and significance of advisory opinions were well stated by the justices of the Supreme Court of Delaware when they were asked to give an advisory opinion, as they were permitted to do, when they stated: "Since the giving of the opinion fixes no legal rights and entails no legal consequences, it involves no exertion of power over any person; it is merely the performance of our advisory function." *Opinions of the Justices*, 47 Del. 117, 133, 88 A.2d 128

---

[19] One court has said: "It has been said that a declaratory judgment is a binding adjudication of the contested rights of litigants, though unaccompanied by consequential relief, whereas an advisory opinion is merely the opinion of a judge or judges of a court, which adjudicates nothing and is binding on no one." *State* v. *Wilder*, 145 Ohio 2d 447, 455, 62 N.E.2d 156 (1945).

(1952).[20] In a later case they stated: "In other words, advisory opinions do not decide a case, do not adjudicate a dispute and are not judicial rulings in any sense." *Opinion of the Justices*, 413 A.2d 1245, 1248 (Del. 1980). Advisory opinions are generally given by virtue of some authorization, through some constitutional, legislative or executive source. We do not have any such authorization in this jurisdiction. We therefore conclude that the Appellate Court's decision in *Polymer* cannot be considered an "advisory opinion." Accordingly, it will not control our subsequent analysis.

The decisions of our Supreme Court clearly set out that the purpose of the Environmental Protection Act (EPA), General Statutes § 22a-14 et seq., is " 'to give private citizens a voice in ensuring that the air, water and other natural resources of the state remain protected, preserved and enhanced, and to provide them with "an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." General Statutes § 22a-15.' " *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 715, 563 A.2d 1339 (1989), quoting *Connecticut Water Co.* v. *Beausoleil*, 204 Conn. 38, 44, 526 A.2d 1329 (1987). "[E]nvironmental statutes are remedial in nature and should be construed liberally to accomplish their purposes." *McManus* v. *Commissioner of Environmental Protection*, 229 Conn. 654,

[20] The vehicle that permitted the justices of the Supreme Court of Delaware to give advisory opinions was: "10 Del. C. § 141 [which] provides in pertinent part that: '[t]he Justices of the Supreme Court, whenever the Governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touching the proper construction of any provision in the Constitution of this State, or of the United States, or the constitutionality of any law enacted by the General Assembly of this State or the constitutionality of any proposed constitutional amendment which shall have been first agreed to by two thirds of all members elected to each house.' " *Opinion of the Justices*, supra, 413 A.2d 1246 n.1.

663, 642 A.2d 1199 (1994); *Starr* v. *Commissioner of Environmental Protection,* 226 Conn. 358, 382, 627 A.2d 1296 (1993). "By permitting intervention under § 22a-19 (a), the EPA allows private persons to 'intervene in an existing judicial review of an agency action or to initiate an independent declaratory or injunctive action.' *Connecticut Water Co.* v. *Beausoleil,* supra, 44–45." *Red Hill Coalition, Inc.* v. *Conservation Commission,* supra, 715. Intervention, upon the filing of a verified pleading, is, however, permitted under § 22a-19 (a) only for the limited purpose of raising environmental issues. *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission,* 212 Conn. 727, 734, 563 A.2d 1347 (1989); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 499, 400 A.2d 726 (1978).

In this case, the intervenors claim that they have properly intervened into a proceeding for judicial review. We do not agree. The intervenors argue that *Connecticut Water Co.* v. *Beausoleil,* supra, 204 Conn. 38, is on all fours with the present case. We do not wholly agree with the global "on all fours" claim for *Connecticut Water Co.*

We examine the "on all fours with *Connecticut Water Co.*" claim first. In that case, the plaintiff had instituted an action for damages, claiming that the defendant Beausoleil maintained a private nuisance on his land. The plaintiff further claimed that the defendant had negligently and intentionally permitted the contamination of the plaintiff's reservoir, which was a part of a public water supply system. The "primary issue" in the appeal in *Connecticut Water Co.* was not environmental, however, but, rather, whether the trial court had properly rendered a summary judgment in the defendant's favor on the ground that the doctrine of res judicata precluded the plaintiff's action for damages. See id., 39. The basis for the trial court's ruling had been that *Connecticut Water Co.* "had previously participated in

an administrative action against the defendant" by the commissioner. Id.

The previous administrative action discussed in *Connecticut Water Co.* involved an order of the commissioner that had previously been issued to the defendant pursuant to General Statutes § 22a-432, requiring the defendant to take certain actions to install and maintain erosion and siltation measures on his land. That order contained a finding that the defendant was maintaining a facility " 'which reasonably can be expected to create a source of pollution of the waters of the state.' " Id., 40–41. It also contained measures and programs to be undertaken by the defendant, including a timetable for their completion. Id. That order also contained other provisions, but the commissioner's order referred only to the defendant and his land and did not refer to the plaintiff or its reservoir. The defendant could have sought, but did not seek, a hearing before the commissioner to contest or modify the order as provided in General Statutes §§ 22a-432 and 22a-436. Id., 41. Thereafter, a suit for injunctive relief and compliance with the commissioner's order was instituted against the defendant by the attorney general at the commissioner's request. Id.; see General Statutes § 22a-435.

In that action, the complaint alleged that the commissioner ordered the defendant to take specific measures to prevent pollution to the reservoir, that he had not complied with that order and that, pursuant to §§ 22a-432 and 22a-435, a permanent injunction was sought to restrain the defendant "from maintaining a potential source of pollution to the waters of the state" as well as certain fines. *Connecticut Water Co.* v. *Beausoleil*, supra, 204 Conn. 42. In *that* prior administrative action, Connecticut Water Co.'s motion to intervene was granted, but it filed no other pleading and sought no damages from the defendant for damages to its reser-

voir. Judgment was rendered in accordance with a motion for stipulated judgment. The motion stated that the commissioner and the defendant stipulated to judgment, but it was signed by Connecticut Water Co., Beausoleil and an assistant attorney general for the commissioner. Several months later, the commissioner and Beausoleil signed a consent decree that Connecticut Water Co. did not sign. Id., 42. It was against this general background that the Supreme Court decided *Connecticut Water Co.*

When, however, we examine the case before us, we see that it is not quite "on all fours" with *Connecticut Water Co.*, where the court's decision was not based on environmental issues, but on the relation of the doctrine of res judicata to the challenged summary judgment. "It is the general rule that a case resolves only those issues explicitly decided in the case." *State* v. *Ouellette*, 190 Conn. 84, 91, 459 A.2d 1005 (1983), and cases cited therein including *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 416 n.1, 426 A.2d 1324 (1980). An opinion is to be read "in connection with the facts on which it is based." *City Lumber Co.* v. *Borsuk*, 131 Conn. 640, 646, 41 A.2d 775 (1945). This, however, is not to say that *Connecticut Water Co.* does not afford authority for matters in that decision where the court's analysis of the substantive issues included matters central to its rulings on such substantive issues. See *Stott* v. *Martin*, 783 F. Sup. 970, 974 n.3 (E.D.N.C. 1992).

Our Supreme Court has suggested that a discussion of matters necessary to a holding are not mere dictum. *Diamond National Corp.* v. *Dwelle*, 164 Conn. 540, 544, 325 A.2d 259 (1973). One court notes: " 'It is deemed [that] the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive

of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.' " (Emphasis in original.) *State* v. *Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981), quoting *Chase* v. *American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598 (1922); see *Will of Wehr*, 247 Wis. 98, 108, 18 N.W.2d 709 (1945). For these reasons, it is quite apparent that this case is not "on all fours" with *Connecticut Water Co.*

We have already set out the facts in *Connecticut Water Co.* In the present case, the relevant facts are as follows.[21] The zoning commission operates under regulations that require a business operated as a quarry to apply for and to obtain a natural resources removal permit pursuant to the commission's regulations. Though operating as a quarry, the defendants did not have a valid natural resources removal permit and the zoning commission, pursuant to § 8-12, issued a cease and desist order to the defendants to cease the unpermitted activities. The defendants had the right to appeal that order to the zoning board of appeals pursuant to General Statutes § 8-7, but they did not do so. Thereafter, the zoning commission proceeded, by verified complaint in the Superior Court, with its injunction action pursuant to § 8-12 and § 242-701 of the Brookfield regulations.

In arguing that they have properly intervened into a "proceeding for judicial review," the intervenors state in their brief: "In *Connecticut Water Co.*, *the enforcement action of the DEP commissioner 'involved a judicial review of an action arising out of the particular jurisdiction of the commissioner.*" (Emphasis in original.) This is apparently a reference to the sentence in *Connecticut Water Co.* where, in discussing the "prior

---

[21] Earlier in this opinion we have referred to the facts of this in greater detail.

administrative action" in that case, the court stated: "The enforcement action of the commissioner in this case [the prior administrative action case] involved a judicial review of an action arising out of the particular jurisdiction of the commissioner." *Connecticut Water Co.* v. *Beausoleil,* supra, 204 Conn. 47. We do not consider that statement dispositive of the intervenors' claim in this case that they "have properly intervened into a proceeding for judicial review" in view of the differences which we have demonstrated between this case and *Connecticut Water Co.*

In determining whether the intervenors have properly intervened into a proceeding for judicial review, we keep in mind the context in which this claim is made. We have already set out the fact pattern in which this case was presented to the Danbury Superior Court. Section 22a-19 (a) provides in part: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law . . . any person . . . may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of this state." With that, we turn to the meaning of "judicial review" as used in § 22a-19 (a).

Webster defines "review" to mean "to reexamine judicially." Webster's Third New International Dictionary. Black defines "judicial review" as the "[p]ower of courts to review decisions of another department or level of government." Black's Law Dictionary (6th Ed. 1990), citing *Marbury* v. *Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803).

In the trial court, the plaintiffs maintained that they were entitled to intervene under § 22a-19 (a), arguing

through counsel, "[s]o, we are clearly here in this court in this case in a proceeding which is an administrative proceeding or another proceeding for which judicial review has been made available, and therefore, the intervenors fall very clearly within the letter of the statute, [§ 22a-19]." The trial judge, on more than one occasion, inquired as to what he was "judicially reviewing at this time." In determining whether the intervenors had standing under § 22a-19 (a), the trial court stated that "the question is whether this is either an administrative, licensing or other proceeding or a judicial review thereof made available by law." The trial court concluded that it was not. In denying intervention, the court referred to the "path" by which the matter had come before it. That court correctly indicated that if this were a case where there had been an appeal (of the cease and desist order of the zoning commission) to the zoning board of appeals, and then an appeal from the latter board to the Superior Court, that would be a different case from the one before it. In that event, he opined, the intervenors could have intervened in the Superior Court under § 22a-19 (a). That not being the case, the court denied § 22a-19 (a) intervention.

In examining the trial court's action, we conclude that the trial court was not conducting a "judicial review" under § 22a-19 (a). As we have noted previously, the zoning commission's cease and desist order was never appealed by the defendants to the zoning board of appeals, although the defendants were entitled to do so. See General Statutes § 8-7. That failure to appeal established the proscribed conduct of the defendants, which was the subject of the cease and desist order in this case. The proceeding by verified complaint[22] in the Superior Court did not seek judicial

[22] We further point out that the defendants filed an answer with special defenses to this verified complaint as well as setting up a counterclaim that alleges constitutional violations because of the actions of the zoning commission's cease and desist order. Its answer to the verified complaints,

review of prior proceedings, but, rather, sought to invoke the powers of the Superior Court for the injunction and other relief provided by § 8-12.[23] The trial court was asked to exercise affirmatively its powers under § 8-12 with reference to the violation of the regulations by the defendants. The trial court did not improperly conclude that the appellants were not entitled to intervene under § 22a-19 (a) on the ground that the matter before the trial court was a "judicial review" of a "proceeding."

That, however, does not end our inquiry. There remains to be addressed the claim that intervention should have been allowed on the ground that the matter before the trial court fairly came within the "other proceeding" language of § 22a-19 (a), quite apart from the "judicial review" language of the statute. We believe that intervention was appropriate under the "other proceeding" claim. We need not repeat here what we have said about the purpose of the EPA or that such statutes are remedial in nature and should be liberally construed to accomplish their purpose. Parenthetically, we note that one court has noted that "C.J.S. quite properly defines a remedial statute as one 'designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good, and [are] generally to be liberally construed.' § 82 C.J.S. Statutes § 388 (1975)." *Big Fork Mining Co.* v. *Tennessee Water Quality Control Board,* 620 S.W.2d 515, 520 (Tenn. App. 1981). In light of the claim here, it is appropriate to examine briefly the legislative history involving the enactment of § 22a-19 (a). The present General Statutes

however, does not deny, its allegations of the issuance of the cease and desist order and that the defendants did not appeal that order to the Brookfield board of zoning appeals.

One of the provisions of the stipulation between the zoning commission and the defendants, which the trial court approved on March 14, 1994, was that the defendants withdrew their counterclaim with prejudice.

[23] See footnote 3.

§ 22a-15 was part of the 1971 enactment that included the present § 22a-19 (a). That section, i.e., § 22a-15, provided that "*each person* is entitled to the protection, preservation and enhancement" of the "public interest in the air, water and other natural resources of the state of Connecticut." (Emphasis added.) It is further provided that "it is in the public interest to provide *all persons* with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." (Emphasis added.) General Statutes § 22a-15. The language of § 22a-15 as it stands today is the same as when the legislation was originally passed in 1971. The legislative history also discloses that the proposed statute expands the right of a person to have access to the courts in pollution matters. 14 H.R. Proc., Pt. 2, 1971 Sess., p. 739, remarks of Representative John T. Papandrea. Moreover, that history also reveals that it was opined that the legislation was "a necessary bill because it may well prod many of our state agencies charged with the protection of the environment . . . into more thorough and responsive carrying out of the legislative programs." Id., p. 745, remarks of Representative Francis J. Collins.

In assessing the meaning of "other proceedings," we do not regard the doctrine of ejusdem generis as controlling in view of the contrary legislative intent that is unmistakably evident, that is, the broad sweep of those to be affected where environmental issues are concerned. See *State* v. *Russell*, 218 Conn. 273, 278, 588 A.2d 1376 (1991). *Russell* indicates that the rule of ejusdem generis, which is that where general terms are followed by specific terms in a statute, the general terms will be construed to embrace things of the same general kind or character as those specifically enumerated, does not apply where a contrary intent appears. Id. A contrary intent, as we have seen, does appear here, especially

with the demonstrated legislative intent to increase access to courts to all persons under the legislation. Any arguable ambiguity that might exist in the "other proceeding" language of § 22a-19 (a) is resolved, by recognized tenets of statutory construction including the examination of legislative history.

"[T]he General Assembly is presumed to have intended every statutory word and phrase to have meaning"; *Lechner* v. *Holmberg*, 165 Conn. 152, 159, 328 A.2d 701 (1973); and that it did not intend to enact meaningless provisions. *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 407, 528 A.2d 805 (1987). Moreover, "the application . . . of common sense to the statutory language is not to be excluded" in its construction. *Peck* v. *Jacquemin*, 196 Conn. 53, 63, 491 A.2d 1043 (1985).

Here, we submit that the words "administrative" and "licensing" as used in § 22a-19 (a) are directed to agency proceedings. If "other proceedings" is to be given meaning in § 22a-19 (a), it can refer only to court proceedings such as the one presented in the Danbury Superior Court. Such a construction attains "a rational and sensible result that bears directly on the purpose the legislature sought to achieve." *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991); *Peck* v. *Jacquemin*, supra, 196 Conn. 63–64. To conclude otherwise here would thwart the legislative purpose. *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 426, 572 A.2d 951 (1990).

That "other proceedings" encompasses court proceedings finds further support in the tenet that "[w]here a statute or regulation does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning." *Ziperstein* v. *Tax Commissioner*, 178 Conn. 493, 500, 423 A.2d 129 (1979). There is no question that "other proceeding" follows the disjunctive "or" which in turn

follows the words "[i]n any administrative, licensing" so that "or" indicates that which immediately follows, i.e., "other proceeding," is something different and distinct from its antecedent language. This accords with the plain meaning of "other" which is defined by Webster to mean "being the ones distinct from the one or those first mentioned or understood . . . not the same . . . different, distinct . . . ." Webster's Third New International Dictionary (1971).

This proceeding has certain zoning and licensing overtones, and suggests some troublesome environmental issues, as does its companion DEP case. These two cases suggest a number of similar environmental issues. Mindful that the "environment" encompasses all the factors that affect the quality of life; see *Jones* v. *United States Dept. of Housing & Urban Development*, 390 F. Sup. 579, 591 (E.D. La. 1974); it can be seen that environmental issues may arise in a number of settings. Our courts have prudentially limited intervention under § 22a-19 (a), consistent with legislative intent, to the raising of environmental issues only. *Red Hill Coalition, Inc.* v. *Conservation Commission*, supra, 212 Conn. 715; *Connecticut Water Co.* v. *Beausoleil*, supra, 204 Conn. 45; *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 483. In this case, the appellants should have been allowed to intervene.

The judgment is reversed and the case is remanded with direction to grant the requests to intervene.

In this opinion the other judges concurred.